UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 04 CR 423-2 |
| ) | |
| GINO MCMAHAN, ) | Judge Rebecca R. Pallmeyer |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION AND ORDER

Defendant Gino McMahan is serving a 260-month sentence after being convicted at trial in February 2005 for conspiracy to possess with intent to distribute 50 grams or more of cocaine base, more than 500 grams of cocaine, and less than 100 grams of heroin. He was also convicted of a count for distribution of at least 500 grams of cocaine. Mr. McMahan now moves [698] for a reduced sentence under the First Step Act, Pub. L. No. 115-391, § 404, 132 Stat. 5194, 522 (2018), which makes retroactive the changes to the drug amounts that trigger mandatory minimum sentences provided in the Fair Sentencing Act of 2010, Pub. L. 111-220, 124 Stat. 2372, 2372 (2010). The government opposes Mr. McMahan's motion, arguing that he is not eligible for a sentence reduction under the First Step Act and, in the alternative, that the court should exercise its discretion under the Act to deny relief. As discussed below, the court concludes that Mr. McMahan is eligible for relief and reduces his sentence to time served.

### BACKGROUND

In July 2004, Mr. McMahan and several co-defendants were charged with various drug crimes arising from a drug distribution conspiracy. (Indictment [77] at 1–3.) In Count I of the second superseding indictment, Mr. McMahan and four co-defendants were charged with conspiracy with intent to distribute mixtures containing in excess of 5 kilograms of cocaine, 50 grams of cocaine base or "crack cocaine," and 100 grams of heroin. (2d Superseding Indictment

[225] at 1–3.) Mr. McMahan was also charged with distributing approximately 239 grams of cocaine (Count III) and using a communication facility to commit a felony (Counts VIII and IX). (*Id.* at 5, 10–11.) On February 16, 2005, Mr. McMahan was found guilty on Counts I and III but not guilty on Counts VIII and IX. (Feb. 16, 2005 Min. Order [279].)

At his September 2005 sentencing, Judge Amy St. Eve, then of this court, found Mr. McMahan responsible for 2.8 kilograms of crack cocaine. (Dec. 28, 2011 Order [626] at 3.) This gave him a base offense level of 38, which was increased by 6 levels for his possession of firearms in the course of the offense and his role as one of the leaders of the conspiracy. (Gov't's Resp. to Def.'s Am. Mot. [702] at 2.) Mr. McMahan was subject to a statutory minimum of 20 years with a 21 U.S.C. § 851 enhancement. (Def.'s Am. Mot. [698] at 2.) And with an offense level of 44 and a criminal history category of I, his guideline range was life imprisonment. (*Id.*) Judge St. Eve sentenced Mr. McMahan to 312 months on Counts I and III, to run concurrently, followed by ten years of supervised release. (Am. J. [409] at 2.) The court chose to depart from the guideline range to avoid a disparity with the sentence imposed on a co-defendant, Antonio McMahan, who had been sentenced to 324 months but had a higher criminal history. (*See* Order regarding Mot. for Sentence Reduction [597].)

Mr. McMahan and his co-defendants appealed, challenging the government's failure to disclose impeachment evidence, the exercise of one of the government's peremptory challenges, the admission of certain evidence, and comments made by the prosecutor during closing arguments. But the Seventh Circuit affirmed for all issues raised by Mr. McMahan. *See United States v. McMahan*, 495 F.3d 410, 416 (7th Cir. 2007), *cert. granted in part, judgment vacated in part sub nom. Smith v. United States*, 552 U.S. 1091 (2008).

Since that time, Mr. McMahan has moved three times for a reduced sentence. In June 2008, he moved for a sentence reduction under Amendment 706 of the Federal Sentencing Guidelines, which modified the drug quantity thresholds for crack cocaine offenses. (*See* Mot. to Modify Sentence [540].) Judge St. Eve granted the motion, reducing Mr. McMahan's sentence to

260 months. (Order regarding Mot. for Sentence Reduction [597].) Second, Mr. McMahan sought a sentence reduction in November 2011 under Amendment 750 to the Sentencing Guidelines (Def.'s Mot. under 18 U.S.C. § 3582(c) [617]), which was adopted in response to the Fair Sentencing Act of 2010 and changed the crack cocaine mandatory minimums, *see United States v. Curb*, No. 06 CR 324-31, 2019 WL 2017184, at *2 (N.D. Ill. May 7, 2019). The court denied that motion because Amendment 750 did not lower his guidelines range. (*See* Dec. 28, 2011 Order [626] at 3.) Third, in July 2015, Mr. McMahan moved for a sentence reduction under Amendment 782. (Mot. to Modify Term of Imprisonment [650].) Judge St. Eve denied this motion because his 260-month sentence remained below the low-end of his new guideline range. (Sept. 25, 2015 Order [666] at 2.)

In 2018, Congress passed the First Step Act, which made retroactive the Fair Sentencing Act of 2010's changes to the drug amounts that trigger mandatory minimum sentences. When Mr. McMahan was sentenced, the guidelines range for the distribution of 50 grams or more of cocaine base was ten years to life imprisonment, and the range for distributing 5 to 50 grams was five to forty years imprisonment. *See* 21 U.S.C. § 841(b)(1)(A)(iii), (B)(iii) (2002 Supp.) A defendant sentenced for amounts of 28 to 280 grams after the Fair Sentencing Act was enacted would face a range of five to forty years; for amounts less than 28 grams, there is no minimum sentence and a twenty-year maximum. *See* 21 U.S.C. § 841(b)(1)(B)(iii), (C). These less stringent penalties initially applied only to defendants sentenced after the 2010 Act's enactment. *See Dorsey v. United States*, 567 U.S. 260, 281 (2012) ("[W]e conclude that Congress intended the Fair Sentencing Act's new, lower mandatory minimums to apply to the post-Act sentencing of pre-Act offenders."). But the 2018 First Step Act made retroactive the Fair Sentencing Act's increase in the quantity of crack necessary to trigger § 841's penalties. *See* Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222 (2018). Mr. McMahan now moves [698] for a sentence reduction under § 404 of the First Step Act.

**DISCUSSION**

**A.    ELIGIBILITY**

The First Step Act provides, "A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." First Step Act § 404(b) (citation omitted). Section 2 of the Fair Sentencing Act modified the amounts of crack cocaine necessary to trigger certain mandatory minimum sentences, while section 3 eliminated mandatory minimums for simple crack cocaine possession. Pub. L. No. 111-220, § 2–3, 124 Stat. 2372, 2372 (2010). "Covered offense" in the First Step Act is defined to mean "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010." First Step Act § 404(a). Section 404(c) of the First Step Act precludes relief for a defendant who has already been denied First Step Act relief, or, relevant here, whose "sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010." *Id.* § 404(c). The government contends both that Mr. McMahan was not sentenced for a "covered offense" and that he has already had his sentence reduced under the Fair Sentencing Act. The court disagrees on both points.

In arguing that Mr. McMahan's sentence is not for a "covered offense," the government repeats an interpretation of the First Step Act that it has submitted many times to courts in this district and that has been repeatedly rejected. Specifically, the government insists that what matters when determining whether his offense was a "covered offense" is his actual conduct as opposed to the quantity of crack cocaine charged in his indictment or the statute under which he was convicted. (*See* Gov't's Resp. to Def.'s Am. Mot. [702] at 5–6.) Hence, because at his sentencing Judge St. Eve found him responsible for trafficking 2.8 kilograms of crack cocaine, Mr. McMahan's offense was unaffected by the Fair Sentencing Act's reduction in statutory penalties.

*See* 21 U.S.C. § 841(b)(1)(A)(iii) (280 grams or more of cocaine base are subject to a sentencing range of ten years to life imprisonment).

Although the Seventh Circuit has not yet weighed in on this issue, courts in this district have frequently held that what matters is the amount of crack cocaine charged in the indictment. *See, e.g., United States v. Jones*, No. 10 CR 985, 2019 WL 4942365, at *3 (N.D. Ill. Oct. 8, 2019); *United States v. Williams*, 402 F. Supp. 3d 442, 445 (N.D. Ill. 2019); *United States v. Cross*, 397 F. Supp. 3d 1184, 1186 (N.D. Ill. 2019); *United States v. Wright*, No. 03 CR 362-2, 2019 WL 3231383, at *3 (N.D. Ill. July 18, 2019); *United States v. Johnson*, No. 01 CR 543, 2019 WL 2590951, at *3 (N.D. Ill. June 24, 2019); *United States v. Booker*, No. 07 CR 843-7, 2019 WL 2544247, at *2-3 (N.D. Ill. June 20, 2019). These other courts have concluded that § 404(a)'s phrase "a violation of a Federal criminal statute" refers to what statute the defendant is charged with violating and not his actual conduct. After all, the statute concerns a "covered *offense*," not "covered conduct." *See Williams*, 402 F. Supp. 3d at 445–46; *see also Hughey v. United States*, 495 U.S. 411, 415–16 (1990) (holding that "offense" in 18 U.S.C. § 3663 refers to the "offense of conviction"). This court, like its colleagues, disagrees that the phrase "the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act" modifies "violation" as opposed to "Federal criminal statute." As a court in another district explained, "Here, the 'penalties' clause is most naturally read as modifying 'Federal criminal statute,' the noun phrase immediately next to it. Indeed, Congress appears to have deliberately inserted 'Federal criminal statute' after the word 'violation' and added the word 'statutory' before the word 'penalties' to achieve this exact result." *United States v. Rose*, 379 F. Supp. 3d 223, 228 (S.D.N.Y. 2019) (citation omitted). These repeated references to criminal statutes and statutory penalties "mak[e] clear that eligibility is determined by the statute(s) underlying the defendant's conviction and penalty, not the defendant's offense conduct." *Id.*

The cases the government cites to argue otherwise are inapposite, as Judge Chang explained in *Williams*, 402 F. Supp. 3d at 446. The Supreme Court in *Sedima, S.P.R.L. v. Imrex*

5

*Co.*, 473 U.S. 479, 489 (1985), did not define the term "offense." And *Sedima's* definition of "violation" as meaning "only a failure to adhere to legal requirements" was limited to the RICO statute. Likewise, *United States v. Hayes*, 555 U.S. 415, 421–426 (2009), in which the Court held that "a misdemeanor crime of violence" under 18 U.S.C. § 921(a)(3) refers to the defendant's conduct and not what he had been charged with, does not set out a categorical rule for interpretation of federal criminal statutes. *See Williams*, 402 F. Supp. 3d at 447 ("[The Supreme Court] certainly did not hold that terms like 'crime,' 'offense,' or even 'violation' could or should always be understood to refer only to actual conduct rather than the elements of the crime of conviction."); *see also id.* (noting that in *Nijhawan v. Holder*, 557 U.S. 29, 33–34 (2009), another case the government cites, the Supreme Court acknowledged that "offense" can sometimes refer to a generic crime and not the defendant's conduct).

Reading "covered offense" to refer to the statute under which Mr. McMahan was charged is not, as the government insists, tantamount to a retroactive application of *Alleyne v. United States*, 570 U.S. 99, 103 (2013), which held that "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." *See Crayton v. United States*, 799 F.3d 623, 624 (7th Cir. 2015) (holding that *Alleyne* does not apply retroactively). Rather, the court's interpretation of "covered offense" is based on the language of the statute, not the Supreme Court's holding in *Alleyne* or *Apprendi v. New Jersey*, 531 U.S. 466 (2000). Similarly, *Dillon v. United States*, 560 U.S. 817 (2010), is inapposite. In *Dillon*, 560 U.S. at 825–26, the Court held that district courts are bound by the sentencing guideline range for motions to reduce sentences under 18 U.S.C. § 3582(c)(2). That holding concerned the language of § 3582(c), which authorized courts only to "reduce" a sentence and not to impose a new sentence. *Dillon*, 520 U.S. at 825. Section 404(b) of First Step Act, on the other hand, gives courts the power to "*impose* a reduced sentence." *See United States v. Taylor*, No. 96 CR 119, 2019 WL 3852383, at *4 (N.D. Ohio Aug. 16, 2019) (noting this distinction between the language of the First Step Act and § 3582(c)(2)).

6

Nor is the court persuaded that the consensus approach in this district contravenes congressional intent to eliminate sentencing disparities between defendants charged before and after the Fair Sentencing Act. In support of its sentence-disparity argument, the government asserts that if Mr. McMahan were charged today, the indictment would charge him with trafficking 280 grams or more of crack cocaine; in 2004, prosecutors sought charges only for 50 grams because that amount triggered the most severe penalty, so there was no point in charging a larger quantity. That means, in the government's view, that if this court considers only what is charged in the indictment, Mr. McMahan will benefit from having been charged back in 2004 rather than now. But as other courts have noted, this concern is mitigated by the fact that relief under the First Step Act remains discretionary. *See Williams*, 402 F. Supp. 3d at 449 ("The Act does not *require* a judge to reduce a sentence after holding that the defendant is eligible for relief. . . . Not only are judges not required to reduce the sentence, but they would naturally take evidence about the drug quantity into account in doing so."); *Wright*, 2019 WL 3231383, at *3 ("The issue before the Court is whether Wright is eligible for relief under the First Step Act, not whether his eligibility differs from other defendants. The Court will not disregard Wright's eligibility based on an argument that other defendants might be subject to longer statutory minimum sentences."). The court is also concerned that government's approach would require speculation about what would have happened had the Fair Sentencing Act been in effect, which the court declines to engage in. *See Wright*, 2019 WL 3231383, at *3 (quoting *United States v. Pierre*, 372 F. Supp. 3d 17, 22 (D.R.I. 2019)) ("[A]n approach that focuses on the particulars of the record to determine how the specific defendant committed his or her offense of conviction and how those facts would have hypothetically affected the charges brought against the defendant under the new statutory regime 'effectively requires the Court to employ a prosecutor-friendly "way-back machine," to conjure how the charge, plea, and sentencing would have looked had the Fair Sentencing Act of 2010 been in effect.'").

Finally, the government is also incorrect that Mr. McMahan's sentence has previously been reduced under section 2 or 3 the Fair Sentencing Act.  As noted above, his sentence was previously reduced from 324 to 260 months—in January 2009.  But the Fair Sentencing Act was enacted in 2010.  *See* Pub. L. 111-220, 124 Stat. 2372, 2372 (2010).  The government's brief discusses Amendment 750, but his 2009 motion for a sentence reduction was made under Amendment 706.  (*See* Mot. to Modify Sentence [540].)  The court therefore finds that Mr. McMahan is eligible for relief under the First Step Act.

**B.    DISCRETION TO REDUCE SENTENCE**

Having found that Mr. McMahan is eligible for a sentence reduction under § 404 of the First Step Act, the court turns to whether it should exercise its discretion to reduce his sentence.  Mr. McMahan appears to have been in custody since April 29, 2004, meaning that he has already served about sixteen years, which is almost three-fourths of his 260-month sentence.  Based on good time credits he has accrued, Mr. McMahan is scheduled to be released in May 2024, according to BOP.gov.  To determine whether it should exercise its discretion to set an earlier release date, the court looks to the sentencing factors provided in 18 U.S.C. § 3553(a).  *See United States v. Mansoori*, No. 97 CR 63-9, 2019 WL 6700166, at *5 (N.D. Ill. Dec. 9, 2019); *see also Rose*, 379 F. Supp. 3d at 234 ("[E]ven if consideration of § 3553(a) factors is not expressly required by the First Step Act, the Court concludes that it is appropriate to use that familiar framework to guide the exercise of discretion conferred by the First Step Act.").

"Evidence of post-sentencing rehabilitation 'may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing.'"  *Mansoori*, 2019 WL 6700166, at *5 (quoting *Pepper v. United States*, 562 U.S. 476, 491 (2011)).  Mr. McMahan has engaged in numerous post-sentencing activities aimed at self-improvement.  He has received his GED and completed a drug treatment program as well as courses on operating a forklift and repairing heating, ventilation, and air conditioning systems.  (Def.'s Am. Mot. [698] at 5; Ex. 1 in Supp. of Def.'s Reply [707]; Suppl. Exs. to Def.'s Reply [709].)

Such activities suggest that he can lead a productive life upon release. Indeed, in letters to the court, many of Mr. McMahan's family members and friends offered to help him find jobs and to provide whatever help he would need when he is released.

As noted, Mr. McMahan has already served about sixteen years in custody, a substantial chunk of his adult life. The court sees no obvious basis for a conclusion that additional time in prison would further deter him—or anyone else—from committing additional crimes. *See* 18 U.S.C. § 3553(a)(2)(B) (instructing courts to the consider the need "to afford adequate deterrence to criminal conduct" when imposing a sentence). He is also now forty-four years old, a father and husband. Letters submitted to the court show that he has a strong support network waiting for him when he is released. (Suppl. Exs. to Def.'s Reply [709].) Furthermore, in his own letter to the court, Mr. McMahan takes responsibility and expresses contrition for his past crimes; he also discusses his desire to make a positive impact on his community if and when he is released. (Ex. 1 to Def.'s Reply [707-1.)

The government offers two reasons that the court should not reduce Mr. McMahan's sentence, but neither is persuasive. First, the government urges that the court should refrain from giving him any relief in light of the drug quantities he was involved with. But the government's argument basically repeats the sentencing disparity argument rejected above—that is, that reducing his sentence would be a "windfall" because, were he charged today, he would be indicted for a greater amount of crack cocaine. In essence, the government asks the court to keep Mr. McMahan in prison based on a hypothetical. *See Mansoori*, 2019 WL 6700166, at *5 ("The Court will not assume that any defendant could have been indicted on a greater drug quantity."). True, consistent sentencing for similarly situated offenders is important, *see Dorsey*, 567 U.S. at 277–79 (noting concerns about "creating new anomalies—new sets of disproportionate sentences—not previously present" when applying new sentencing rules), but such concerns are outweighed by Mr. McMahan's positive post-sentencing record. The government, moreover, has failed to explain why, after sixteen years, keeping Mr. McMahan in prison until 2024 is necessary to

9

"promote respect for the law" and "provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A).

Second, the government notes that Mr. McMahan has committed a few recent prison infractions: three violations for possessing a hazardous tool and one for pushing a prison staff member. (Gov't's Resp. to Def.'s Am. Mot. [702] at 15–16.) According to the government, these infractions show that he "is not entitled to claim that his time in prison has rehabilitated him." (*Id.* at 15.) Mr. McMahan addressed these infractions in his reply brief and letter to the court. (Def.'s Reply [706] at 15 n.5; Ex. 1 to Def.'s Reply [706-1].) All hazardous tool infractions were for possession of a cell phone, which he had obtained to communicate with his sister, who had been diagnosed with terminal cancer, and his family after his daughter had been killed. (Def.'s Reply [706] at 15 n.5.) As to the assault of a staff member, Mr. McMahan says that the guard jumped on his back first (Def.'s Reply [706] at 15 n.5), and the government recognizes that it did not result in a serious injury (Gov't's Resp. to Def.'s Am. Mot. [702] at 16), and. None of these infractions occurred within the last two years. Moreover, Mr. McMahan is currently housed at a low-security facility (Def.'s Am. Mot. [698] at 6), suggesting that he does not pose any significant danger. This court is not convinced that these prison infractions demonstrate that Mr. McMahan poses a substantial risk for recidivism.

## **CONCLUSION**

Defendant Gino McMahan's amended motion [698] under § 404(b) of the First Step Act is granted. The court orders that his sentence be reduced to time served, and that he be released from custody forthwith. The court leaves intact his ten-year period of supervised release.

ENTER:

*Rebecca R. Pallmeyer*
REBECCA R. PALLMEYER
United States District Judge

April 17, 2020